UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE № 1:23-CR- 20165-ALTONAGA

UNITED STATES OF AMERICA,

    *Plaintiff,*

vs.

TYLER OSTERN,

    *Defendant.*

_____/

## **DEFENDANT OSTERN'S MEMORANDUM IN AID OF SENTENCING**

TYLER OSTERN by and through the undersigned counsel, and pursuant to Rule 32 (f) of the Federal Rules of Criminal Procedure, Rule 88.8 of the Local Rules for the Southern District of Florida, and the due process clause of the Fifth Amendment to the United States Constitution, respectfully submits this Memorandum In Aid of Sentencing in order to provide information to assist the Court in fashioning a sentence based upon the Defendant's guilty plea that is "sufficient but not greater than necessary" to achieve the statutory purposes of punishment as required by 18 U.S.C. §3553.

### **STATEMENT OF FACTS**

1. On May 30, 2023, Tyler Ostern appeared before the Court and entered a plea of guilty to the Information. The Information charged the Defendant with Conspiracy to Commit Wire Fraud and Securities Fraud, in violation of 18 United States Code §371.

2. Subsequent to the entry of the Defendant's plea a Presentence Report (PSR) was prepared. This report is approximately thirty-four (34) pages in length. The Defense has not objected to the facts contained within the PSR but seeks in this

> Memorandum to provide the Court with insight as to who this individual, this human being, is. We do not seek to diminish the allegations of wrongdoing perpetrated by Tyler Ostern. We offer to address the underlying issues of who Tyler Ostern is to allow the Court the opportunity to better appreciate the individual who stands in the dock.

3. The Sentencing Guideline Offense Level, calculated by the United States Probation Office, is 19 with criminal history category of I with a guideline "range" of 30-37 months. Mr. Ostern requests that the Court consider applying the two-point Section 4C1.1 reduction for Zero-point offenders that goes into effect in November[1]. He meets all the requirements of this section.

4. The sentencing in this matter is scheduled for Wednesday, August 16, 2023.

## INTRODUCTION

This Sentencing Memorandum seeks to provide the Court with a more complete picture of the human being who stands before the court. It is offered to address lapses with the PSR and more accurately reflect who Tyler Ostern is. Tyler Ostern is a twenty-nine-year-old Navy veteran born in Fargo, North Dakota. He was the child of a father who abused alcohol and drugs and was physically and verbally abusive toward his mother. Leaving home to escape the horrible circumstances of a tortured home life, he joined the Navy. After being honorably discharged, he drifted, lived in his car, and attempted to find his footing through a number of jobs. It was a life commenced and

---

[1] See: *United States v. Encarnacion*, 22-cr-20422-DMM; *United States v. Robles*, 22-cr-20494-RNS; *United States v. Palomino*, 22-cr-20501-BB; *United States v. Pozo*, 22-cr-20429-RNS; *United States v. Velasquez*, 22-cr-60207-AHS; *United States v. McNeal*, 22-cr-20467-Gayles; *United States v. Sablon*, 22-cr-20341-JEM.

confronted with a narrow horizon with limited possibilities. The combination of these dismal life circumstances preordained a difficult life journey.

### FAMILY

Tyler and his sister grew up in dire circumstances. Both parents struggled with alcoholism. His father was violent and abusive. Ultimately, his father left the house when Tyler was six or seven years of age. His mother became a single parent to two young children and worked three jobs to provide for her family. (His father was jailed a number of times for failing to provide child support.) The family relied upon government assistance to survive.

### SCHOOLING

Tyler graduated from West Fargo High School. He enlisted in the Navy to get away from Fargo and commence life anew. After his service in the Navy, he attended college at Central Piedmont Community College for approximately eighteen months under the GI Bill.

### MILITARY SERVICE

Tyler served in the United States Navy as radio electronics technician. The highest rank he was able to attain was an E-3. He served his country aboard submarines and a guided missile frigate. He was honorably discharged from the Navy.

### CRIMINAL HISTORY

Prior to his surrender for the crime alleged, the Defendant did not have a criminal history which places into a "Criminal History Category" of I.

### LIFE AFTER NAVAL SERVICE AND WORK HISTORY

After his discharge from the Navy Tyler lived in Charlotte, North Carolina. His soon to be ex-wife took out loans in his name and depleted his bank accounts. His uncle was living in Charlotte at that time and offered him a place to stay until he got back on his feet. He worked at RJS Logistics as a dispatcher. After his divorce, he developed a relationship with a young woman and moved in with her. The relationship failed and she took advantage of him by draining his bank account. He was relegated to sleeping in his car. He was able to obtain "lodging" through a co-worker. It was an abandoned house without running water or electric power.

He switched jobs and began working for Total Quality Logistics. A co-worker suggested that he enter the world of crypto investing. He had never traded stocks or crypto before, but, in his mind, it seemed to provide an avenue to multiply his income. He began trading on Coinbase despite his limited knowledge and experience regarding crypto. He joined the boom. He discovered an app called "Telegram" where crypto companies would share updates on their tokens, projects, and currencies with investors. He communicated with individuals in chatrooms. Despite his best efforts, he lost all his investments in crypto. Believing that crypto was the future he set about to create his own group – Moonwalkers Trading. A group where members could brainstorm ideas concerning crypto investing. The discussions revolved around the losses the members had incurred on their investments. The discussion eventually evolved into the idea for the creation of trading platform software, that is a bot, that might mitigate losses and prevent people from losing their investment.

The brainstorming led Tyler to search for a software engineer via Telegram to create the bot. His path would lead him to George Wolvaardt. These efforts would lead

to a software solution that incorporated all the trading and bot mitigation strategies the original group came up with and Wolvaardt's additional suggestions.  Shortly after the group noticed trading discrepancies on the token "EOS."  The group joined their (EOS) Telegram chat.  That discussion would lead to Tyler being contacted by an individual in a private chatroom.  This individual said he was from "Blockway Capital" and that he was EOS's "Market Maker."  He proceeded to describe how market making occurred in the traditional (non-crypto) space and how it could be used in the realm of crypto currency trading.  He convinced Tyler to employ their bot to do the same for crypto currency issuers.  Prior to this conversation he was unaware of what a market maker was.

This new world opportunity would lead Tyler to leaving his job and eventually moving into his grandparents' home.  He entered the crypto world not knowing the laws regulating securities.  Eventually, he was connected to Hydrogen.  His inquiries to principals of Hydrogen regarding regulation were shrugged off and he was told that he needn't worry about that – it wasn't a security.  Wolvaardt also assured him that his participation in this arena was a legal avenue as crypto was not subject to applicable security laws.  He did appreciate that he was participating in market manipulation.

Tyler was living with a roommate who took his rent money and never relayed it to their landlord.  He was soon homeless (again) and went back to living in his vehicle.  He would travel to Minnesota to move in with his grandparents.  He maintained his relationship with Hydrogen.  His growing concerns about the legality of "spoof trading" and "wash trading" and his participation in same caused him to re-think his position.  He

cut out those trades which reduced Hydrogen's trading activity. The contract with Hydrogen ended.

Tyler received approximately $36,750 for his efforts over the course of the contract with Hydrogen. The compensation that he received from Hydrogen was not dependent upon the money made from trading. He was paid based upon a contractual obligation. His participation extended from October 2018 to April 2019 (7 months).

He would eventually make his way to Coos Bay, Oregon, where he has been employed as a car salesman with a modicum of success. Working with the dealership he has spearheaded numerous charitable events in his community. He is well thought of in his community and has embarked on a new life with a new partner and her three young children.

## COOPERATION WITH THE SEC

Tyler received a subpoena from the SEC. He would offer testimony under oath waiving his Fifth Amendment privilege. He provided documents to the SEC. Ultimately, the SEC filed a complaint against Tyler. He settled with the government. His obligation to the SEC is $41,860 (before interest). He has paid $16,100 thus far.

## MITIGATING ROLE §3B1.2

Based upon the Defendant's role in the offense his offense level should be decreased. Tyler's role in the offense could best be described as a facilitator. He did not create the bot and received instructions from the Hydrogen principals. He was recruited into the endeavor by the Hydrogen principals who were responsible for the scheme and reaped millions of dollars.

The Application notes in §3B1.2 provide: Applicability of Adjustment.-

(A) Substantially Less Culpable than Average Participant – "…Likewise, a defendant who is accountable under §1B1.3 for a loss amount under §2B1.1…that greatly exceeds the defendant's personal gain from the fraud offense or who had limited knowledge of the scope of the scheme may receive an adjustment under this guideline."

It is a fact based determination and in (C) the Notes provide a list of factors for the court to consider including: the degree to which the defendant understood the scope and structure of the criminal activity; the degree to which the defendant participated in planning or organizing the criminal activity; the degree to which the defendant exercised decision-making authority; and, the degree to which the defendant stood to benefit from the criminal activity.

Tyler received his "marching orders" from others and received less than any other participant in the scheme. It is our view that Tyler falls between a minor and minimal participant and should receive a decrease of three levels in the guideline calculation.

## LETTERS OF SUPPORT[2]

As John Donne observed "No man is an island, Entire of itself…" – Mr. Ostern is attached and committed to his family as they are to him –"Every man is a piece of the continent, A part of the main." The attached letters demonstrate Mr. Ostern's meaning in the lives of his family. His mother's letter is moving and acknowledges his wrong-doing. The letters from other family members describe a young man who overcame challenges in his life. They describe a man at odds with the allegations contained in the Information. Finally, the letter from his employer demonstrates who Tyler is today. He

---

[2] The Letters of Support are attached to this Memorandum as an exhibit.

explained to his boss that he was facing criminal prosecution.  He owned up to his circumstances – and his employer kept him on and hopes to keep him employed.

## TITLE 18 U.S.C. §3553(a) SENTENCING FACTORS

When imposing sentence, the Court is required to consider all the factors set forth 18 U.S.C. § 3553(a) in determining what is a reasonable sentence in each case.  *See, United States v. Booker,* U.S. 220 (2005); *Rita v. United States,* 551 U.S. 338 (2007). The Supreme Court has stressed that the district courts are not to treat the guidelines as presumptively reasonable. *See, United States v. Hunt,* 459 F.3d 1180 (11th Cir. 2006) (explaining that courts "may determine, on a case-by-case basis the weight to give the Guidelines, so long as that determination is made in reference to the remaining § 3553(a) factors that the court must also consider in calculating the defendant's sentence").  In fact, the *Hunt* Court explained that there are "many instances where the Guideline range will not yield a reasonable sentence." *Id.* at 1184.  Mr. Ostern's case represents just such a case.  The primary directive in Section 3553(a) is for sentencing courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2."  The Court is well aware of § 3553(a) sentencing factors.  We have sought to highlight Mr. Ostern's situation considering these factors, particularly, his criminal history category (no intersection with law enforcement until this matter), his age (24-25 at the time of the crime), his upbringing, and his role in the scheme.  Further, his post Hydrogen work demonstrates an individual who is responsible and law-abiding.

## CONCLUSION

The government's offer of a plea to the Information was accepted by the Defendant. Tyler Ostern owned up to his culpability. Is Mr. Ostern irredeemable? Can we entirely eliminate the possibility that he is subject to redemption? "Redemption" means to deliver by paying a price.[3] What is the price Mr. Ostern should have to pay for his actions?

The guidelines suggest a range of 30 to 37 months, that is, two and one-half years to over three years' incarceration - for a non-violent, non-drug related crime with no identifiable victims which he committed at the age of 24 or 25.

The Defendant respectfully requests that this Court impose a sentence at the low end of the Sentencing Guidelines. The Defendant believes that such a sentence meets the sentencing criteria of 18 U.S.C. §3553(a) particularly considering his criminal history category, his limited role in the conspiracy, his limited education, his age, his acceptance of responsibility, and an appreciation and understanding of the arc of his life. Further, a reduction under 4C1.1 is appropriate for a first-time offender and a finding that an adjustment for mitigating role as a minimum/minor participant is appropriate as well. Mr. Ostern believes that such sentence appropriately takes into account his history and characteristics, properly punishes him for his involvement and most certainly provides adequate deterrence for similar action in the future.

---

[3] Redemption is the English translation of the Greek word *apolutrosis, meaning "to purchase in the marketplace."*

Respectfully submitted,

**MICHAEL R. BAND, P.A.**
1224 Alfred I. DuPont Building
169 East Flagler Street
Miami, FL 33131•1210
Tel: 305•372•8500
Fax: 305•372•8504
Email: michael@bandlawfirm.com

*s/ Michael R. Band*

MICHAEL R. BAND
Florida Bar № 228338

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 9th day of August 2023 a true and correct copy of the foregoing Sentencing Memorandum was furnished to all counsel on the list of counsel designated to receive electronic filings in this case.

s/ *Michael R. Band*

MICHAEL R. BAND