**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 23-CR-20165**

**UNITED STATES OF AMERICA**

  v.

**TYLER OSTERN**

  **Defendant.**
_____/

**UNITED STATES' MEMORANDUM IN SUPPORT OF SENTENCING**

The United States, by and through the undersigned attorneys, hereby provides the following information and recommendations to aid the Court in sentencing Defendant Tyler Ostern. Specifically, the United States sets forth below relevant facts regarding Defendant's role in the scheme to which he pleaded guilty and the government's position with respect United States Sentencing Guideline (U.S.S.G.) § 4C1.1, which goes into effect in November 2023. As explained further below, the government agrees with the Guidelines calculation in the Presentence Report prepared by the U.S. Probation Office.

**BACKGROUND**

Defendant, along with two other individuals (one of whom was indicted in the related case *United States v. Kane et al.*, 23-cr-20172) founded Moonwalkers Trading Limited in March 2018. Defendant was the Chief Executive Officer of Moonwalkers. The firm advertised itself as a "market maker" for crypto tokens. In fact, as Defendant has admitted, Moonwalkers was created to act as a market manipulator for its clients and to engage in trading strategies intended to deceive other crypto market participants.

Beginning in March 2018, Defendant and one of his indicted co-conspirators, George Wolvaardt, started developing a trading software, or bot, that was designed to semi-autonomously engage in various manipulative trading activities, including wash trading and spoofing with the intent to mislead other investors and induce them to trade crypto assets at times and prices they otherwise would not have. While developing the bot, Defendant plainly stated that numerous features included in the bot were "illegal." (Ex. A, Excerpts of Ostern-Wolvaardt Telegram Thread.)

Throughout the latter part of 2018, Defendant aggressively marketed Moonwalkers' services across various online crypto trading forums. In late summer 2018, Defendant's co-conspirators at Hydrogen Technology—Michael Kane, Shane Hampton (both charged in 23-CR-20172), and Andrew Chorlian (charged in 23-CR-20171)—were looking for a third-party to help them offload a significant volume of crypto tokens—HYDRO—they had created. After Defendant demonstrated his trading bot (including all of its manipulative and deceptive capabilities) for them, Kane, Hampton, and Chorlian hired Defendant and Moonwalkers to sell HYDRO for the company. Defendant proceeded to use the bot to sell hundreds of millions of HYDRO tokens for his co-conspirators while aggressively manipulating the market for the HYDRO token. For example, between October and December 2018, Defendant, using Michael Kane's trading account on an online crypto exchange, executed over 1,700 wash trades (trades in which the bot bought and sold HYDRO from itself to create the false appearance of supply and demand).

Through use of the trading bot, Defendant generated at least $1.3 million in fraudulent profits for his co-conspirators at Hydrogen Technology. Defendant was paid roughly $36,000 (in Bitcoin) by his co-conspirators at Hydrogen Technology.

## DEFENDANT'S ROLE IN THE OFFENSE

Defendant requests a three-level reduction in his Guidelines calculation, arguing that he played a minimal role in the conspiracy to which he pleaded guilty. The government disagrees and recommends that the Court neither decrease nor increase Defendant's Guidelines calculation based on his role in the offense.

The Commentary to the Sentencing Guidelines provides that a defendant who is "substantially less culpable" than his co-conspirators may be entitled to anywhere from a two to four-point reduction in his Guidelines calculation. U.S.S.G. § 3B1.2 cmt. n.3(A). For example, the commentary explains that "a defendant who is accountable under §1B1.3 for a loss amount under §2B1.1 (Theft, Property Destruction, and Fraud) that greatly exceeds the defendant's personal gain from a fraud offense . . . may receive an adjustment under this guideline." *Id.* Ultimately, however, the determination whether to apply § 3B1.2 is "based on the totality of the circumstances," and courts are instructed to consider the following non-exhaustive list of factors:

i. The degree to which the defendant understood the scope and structure of the criminal activity;
ii. The degree to which the defendant participated in planning or organizing the criminal activity;
iii. The degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;
iv. The nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts; and
v. The degree to which the defendant stood to benefit from the criminal activity.

U.S.S.G. § 3B1.2 cmt. n.3(C). The government acknowledges that Defendant's personal gain—approximately $36,000—was minimal compared to the total ill-gotten gains generated by his and his co-conspirators' manipulative and deceiving conduct. The totality of the circumstances, however, stand against reducing Defendant's Guidelines calculation. Specifically, the relevant

facts show that Defendant played an integral role in planning and facilitating his and his co-conspirators' fraudulent scheme.

- Defendant, in testimony under oath with the SEC, admitted that the trading bot that he and his co-conspirators used was developed based on trading strategies he had previously employed personally that were intended to psychologically influence other market participants. (Ex. B, Excerpts of Dep. of Tyler Ostern, at 33:15–25; 40:01–43:20; 164:02–25.)

- In that same testimony, Defendant acknowledged that the bot was developed with "nefarious" intent and that he intentionally incorporated features into the bot that he understood to be "securities violation[s]." (Ex. B at 42:18; 164:22–25.)

- Defendant personally operated and monitored the semi-autonomous trading bot while it was running 24 hours a day and seven days a week over the course of six months.

- Defendant was, admittedly, less sophisticated than his co-conspirators, who had significantly more experience than Defendant with respect to crypto assets, investing in crypto and other securities, and securities laws and regulations. And Defendant's conduct was directed and monitored by Kane and Hampton. But the bot developed by Defendant and Wolvaardt, and Defendant's operation of that bot, was critical to the success of the overall scheme.

- Although Defendant's personal gain was minimal, he was acutely aware of the broader scope and impact of the fraudulent scheme and knew that his co-conspirators had generated significantly higher profits as a result of his and their efforts. (Ex. C, Excerpts of Moonwalkers-Hydrogen Slack Thread.)

- Defendant's statement in his Mem. in Aid of Sentencing (ECF No. 18) that he was "recruited into the endeavor by the Hydrogen principals," is not accurate. Defendant openly advertised an illegal market manipulation service to his Hydrogen co-conspirators and others. He was willing to provide this service despite knowing that it was patently illegal, and his co-conspirators at Hydrogen, including Kane and Hampton, were more than willing to engage him to provide such services despite knowing the same. Indeed, a couple months after ceasing his work for Hydrogen, Defendant sent a marketing email to over 280 recipients at 91 unique firms advertising Moonwalkers' illegal market making services. (Ex. D, June 6, 2019 Email From Tyler Ostern to Numerous Recipients)

The government respectfully submits that the above facts, taken together with Defendant's minimal personal gain, support a finding that no role adjustment is appropriate.

## **APPLICATION OF PROPOSED U.S.S.G. § 4C1.1**

Defendant requests that the Court apply a 2-point reduction to his guidelines calculation based on the U.S. Sentencing Commission's recently approved amendments to the Sentencing Guidelines, which will take effect on November 1, 2023, unless Congress rejects them. Specifically, Defendant requests that the Court apply newly-proposed § 4C1.1, which provides for a two-level decrease in a defendant's offense level for "zero-point offenders," that is, defendants who have zero criminal history points and meet nine other criteria. The government acknowledges that, if § 4C1.1 were in effect, Defendant would qualify for the reduction. The Court, however, should account for proposed § 4C1.1, if at all, through a downward variance and not by incorporating it into its Guidelines calculation.

This Court is required to apply the version of the Guidelines in effect at the time of sentencing. *See* 18 U.S.C. 3553(a)(4)(A)(ii); U.S.S.G. § 1B1.11(a). Unless Congress provides otherwise, a proposed Guidelines amendment takes effect only after a prescribed period of congressional review has elapsed. *See* 28 U.S.C. 994(p); *Stinson v. United States*, 508 U.S. 36, 41 (1993) ("Amendments to the Guidelines must be submitted to Congress for a 6-month period of review, during which Congress can modify or disapprove them."). In this instance, absent Congressional action, the amendment will not take effect until November 1, 2023. If the court is inclined to consider the 2-level reduction before it takes effect, the court must calculate the Guidelines range under the current version of the Guidelines first. Then, the court may vary downward, in light of the proposed amendment. If the court varies downward, the government asks that the court clearly state that the variance is as a result of the amendment so that the defendant will not receive a further reduction if the Sentencing Commission subsequently makes the amendment retroactive.

## CONCLUSION

For the foregoing reasons, the government recommends that the Court find that Defendant's offense level is 19, after accounting for a three-point reduction for his timely acceptance of responsibility and guilty plea. The government recommends that the Court impose a sentence at the bottom of this range and consider an additional downward variance based on the U.S. Sentencing Commission's proposed new § 4C1.1.

Respectfully submitted,

| | |
|---|---|
| GLENN S. LEON<br>Chief<br>U.S. Department of Justice<br>Criminal Division, Fraud Section<br><br>*s/Andrew Jaco*<br>J. Andrew Jaco<br>Trial Attorney<br>Fla. Special Bar ID: A5503040<br>U.S. Department of Justice<br>Criminal Division, Fraud Section<br>1400 New York Avenue, NW<br>Washington, D.C. 20005<br>Phone: (202) 740-0953<br>Email: andrew.j.jaco@usdoj.gov<br><br>*Counsel for the United States* | MARKENZY LAPOINTE<br>UNITED STATES ATTORNEY<br><br>By: s/Eric Morales<br>Eric E. Morales<br>Assistant U.S. Attorney<br>Southern District of Florida<br>Fla. Bar No.: 1010791<br>99 N.E. 4th Street, Fourth Floor<br>Miami, Florida 33132<br>Office: 305-961-9131<br>Email: eric.morales@usdoj.gov |

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on August 14, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

s/Andrew Jaco
J. Andrew Jaco
Trial Attorney